The Chíef Justice
delivered the opinion of the court.
■ David Walker, sen. having several children, and being possessed of a number of slaves, departed this life, having previously made his will, whereby amongst other tilings, he devised two slaves to his daughter Betsey and two to his son David. Betsey and David afterwards died intestate, under the age of twenty one and without issue, and Samuel Rowton, who had intermarried with their mother, administered upon their estate, and by an order of the county court of Lincoln, had the slaves'so devised to Betsey and David, divided between himself, in right of his wife, and the surviving sisters and brother of Betsey and David. In this division there was allotted to Rowton a female slave named Jinny, at the price of eighty pounds, which being more than an equal share, he paid the surplus in money to those of the sisters and brother who had lió slaves.
Jinny has since had six children, two of which Rowton sold, the one to William Wade, who had intermarried with a sister of Betsey and David Walker, and the other to James Dawson who had intermarried with another sister. Rowton afterwards died intestate, leaving Elizabeth Row-ton, his only child, and his wife administered on his estate.
In this state of things Jesse Walker, the brother of Bet-sey and David, and Robert Lytle and James Sutton, who had intermarried with two of their sisters, together with their wives, tiled their bill in chancery, lor the purpose of having a partition of the slave Jinny and her children, upon the ground that the surviving sisters and brother of Bet-sey and David Walker Were entitled, as their heirs, to the whole of the slaves devised to them by their father, to the exclusion of their mother; and they made their mother, Mrs. Rowton, her daughter Elizabeth Rowton, Wijliam Wade and wife, and James Dawson and wife, defendants. The suit having abated as to Jesse Walker by his death, it was revived in the names of his children, and Mrs. Sutton having also died, pending the suit, her children were, by an order of the court, made defendants, but no steps were taken to bring them before the court. The Other defendants having answered, the cause was heard, and the court ¡decreed the bill to be dismissed with costs, to which decree this writ of error is prosecuted.
Slaves, the property oí the wife, are vested in tb-husband, and if he survives the wife, it is immaterial whether they were reduced to possession during the coverture or not, if they are realestate they vest without possession; if personal, be alone is representative of the wife, and therefore entitled to the possession.
Preliminary to an investigation of the merits of the case, ifc becomes necessary to enquire whether it was regular to hear and decide the cause, without having the children of Mrs, Sutton before the court.
This depends upon the question, whether the interest of Mrs. Sutton descended to her children or not.
If it did, they were no doubt necessary parties, and ought to have been before the court; but, on the contrary, if her interest did not descend to them, it is equally clear that they were not necessary parties, and that the order making them defendants was supererogation.
That the interest of Mrs. Sutton did not descend to her children, but vested in her husband, we think is evident. The 34th section of the “act to reduce into one the several acts respecting slaves, &c.” is conclusive upon this point. By that section it is provided, “where any slave or slaves have been or shall be conveyed or bequeathed, or have or shall descend to any feme covert, the absolute right, property and interest of such slave or slaves, is hereby veste4 and shall accrue to, and be vested in, the husband of suclj feme covert, &c.”t — 2 Liltell, 121. '
Whether this section should be construed to have the ef, feet of so completely divesting the wife of all interest in a slave thus acquired, that if the husband should die before the slaye was reduced to his possession, the right would not survive to the wife or her representatives, or should be construed only to place a slave, in this respect, upon the footing of any other personal chattel, the right whereof, in case of the death of the husband before it is reduced to his possession, will survive to the wife or her representative, need not, we apprehend, be decided. For, according to either construction, the husband, if he should survive the wife, as is the case now before the court, and not the children of the wife, would have the right to maintain an action for the recovery of the slave. According to the former construction he might maintain such action in his own right, and according to the latter construction he might do so in the right of his wife, being entitled exclusively, as her representative, to her personal estate. It follows, therefore, that the children of'Mrs. Sutton were not necessary parties to the suit, and that there was no irregularity in hear, ing and deciding the cause, without having them before the court.
The case, on its merits, presents some difficulty, Thera *519 ⅛ indeed, no doubt that, on the death of Betsey and David Walker, the right of the slaves devised to them b\. their father descended to their surviving sisters and brother, to the exclusion of their mother. For, by the 28th section of the act before referred to, slaves are declared to be real cs-fate, and made to descend as lands are directed to descend by the act directing descents, and by the 4th section of that áct, (1 Littell, 557,) it is provided that ‘¡where an infant Shall die without issue, having title to any real estate inheritance, derived by purchase or descent from the father, the mother of such infant shall not succeed to nor enjoy the same or any part thereof, if there be living afty brother or sister of such infant.” The right of the surviving sisters an d brother to the whole of the slaves devised by their father to Betsey and David Walker, was, therefore, originally indisputable, and the only difficulty in'now sustaining the complainants’ claim, grows out of the division that was made and the great lapse of time which has intervened. This difficulty, we are inclined to think, howeter, is insuperable. Near fifteen years from the time of making the division had elapsed before the commencement of this suit, a period far beyond the time prescribed by the statute of limitations, for bringing any action for the recovery of a slave or' its value, and Walker and Sutton appear, shortly after the division, to have been apprised of the nature of their rights, and have, notwithstanding, ever since, until Ihe bringing of this suit, acquiesced in the arrangement then made. We do not, suppose that the statute of limita-Sons in terms applies to the case, but it is no less obligatory upon a court of equity than upon a court of law, and it is considered as the rule of decision in relation as well to to equitable as legal rights. In reference to the latter, a court of equity decides in obedience to the statute, and ⅛ reference to the former, it conforms to the statute by acting upon its principles, according to the rule ¿quitas- sequi-iire legem. The principles of the statute would not, indeed, have applied to the case, had Rowton continued to hold the slaves as administrator, for his possession would not, in that case, have been adverse to the right of the complainants; but after the division was made, he must be considered as holding the slave allotted to him in his own right, and, consequently, adversely to the right of the heirs.
Slaves be-ommue,vest mJ!'® a" „r S!-¿ the mother,
But if un-of division of •'iUth slaves ^^alioted ,.0 lie moilier, who holds' for a tinaos vear™ (⅛<= brothers undei^n0™6' abílítv^0 the act o'fiimita-nonswüipi-⅛.' ½
stat. of limü tati',ns ⅛ noTembrae» Droceedinus" in chancery, its provision»
The great length of time, therefore, which has elapsed ¿mee the division, furnishes an insuperable objection to a *520 ¡recovery by Walker and Sutton, who labored, at the tlSe of the division, under no disability, and have so long sub* sequently thereto, acquiesced in that arrangement.
Hardin for plaintiff, Haggin and Daviess for defendant.
Rut the same objection does not apply to the case of Ly-tle and wife. For, at the time of the division, she seems to have been an infant of very tender years, and was not of full age when the bill was tiled, nor does she appear to have been married by Lytle long prior to the commencement of this suit. But it appears that she obtained, in virtue of the division that was made, a slave of more value than she would have been entitled to, had no part been allotted to her mother. That slave, Lytle has received since his marriage, together with the hire which had previously accrued. It is true, that Mrs. Lytle was required to pay to the others who received no slaves, the surplus of the value of the slave allotted to her, according to the erroneous principle upon which the division was made; but it does not appear that she ever did pay such surplus, nor is it even alledged in the bill that she had done so. Having received, therefore, more than her equal share of the slaves, according to their value at the time of the division, she could have no just ground to complain of the division. But, supposing Lvtle entitled to a re-division, it could only he upon the principle of his bringing in to be divided the slave wducb he haS received, and accounting for its profits; but this he does not offer to do, nor does it appear; if he were to do so, that hé would be entitled to more than he has actually received.
The decree must, therefore, be affirmed with cost.